IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ROBERT L. JENKINS   # 38083                                                            PETITIONER

V.                                                              CIVIL ACTION NO. 1:15cv28-HSO-RHW

RON KING and MARSHALL L. FISHER                                              RESPONDENTS

REPORT AND RECOMMENDATIONS

Before the Court are [1] the December 16, 2014 Petition for Writ of Habeas Corpus filed by counsel on behalf of Robert L. Jenkins pursuant to 28 U.S.C. § 2254, and [15] Respondents' April 1, 2015 response to the petition.  Having considered the pleadings, exhibits, records on file, briefs and arguments of the parties, and the relevant legal authority, the undersigned United States Magistrate Judge is of the opinion that Petitioner's request for federal habeas relief should be denied and the petition, dismissed.

Preliminary Matters

Plaintiff has moved to strike [18] Respondents response in opposition to his traverse on grounds that the Rules Governing Section 2254 Cases contains no provision for such a pleading.  Alternatively, Plaintiff asks the Court to consider his reply to [18].  Striking pleadings is a drastic remedy to be used only when the purposes of justice so require.  Because the undersigned perceives no prejudice from the response to the traverse, and has considered [20] Plaintiff's reply in determining this matter, the undersigned will recommend that the motion to strike be denied.

Facts and Procedural History

Robert L. Jenkins is presently confined at Central Mississippi Correctional Facility (CMCF) in Pearl, Mississippi where Ron King is superintendent.  Marshall L. Fisher is the Commissioner of the Mississippi Department of Corrections (MDOC).  Jenkins is in custody of

the MDOC serving a life sentence as a habitual offender for conviction of possession of more than 0.1 gram but less than 2.0 grams of cocaine.  Jenkins was indicted for the offense on January 7, 2008 by an indictment which  charged him as a habitual offender under Miss. Code Ann. § 99-19-81.  [16-1, pp. 16-17]  The indictment was subsequently amended to charge Jenkins as a habitual offender under § 99-19-83.[1]  [16-2, pp. 66-67]  A Harrison County Circuit Court jury found Jenkins guilty on September 16, 2009, based upon the testimony of four witnesses as summarized below, and physical exhibits received into evidence.

At approximately 11:38 p.m. on January 27, 2007, Biloxi Police Patrol Officer Michael Brennan saw Jenkins with three Hispanic males at Esters Boulevard and Nixon Street near Bush Park in Biloxi.  When the four saw Brennan's police car they separated, the Hispanic males going into the park and Jenkins staggering along Esters Boulevard.  Brennan stopped Jenkins for a sobriety check, while fellow Officer Palmer checked out the Hispanic males walking through the park.  Brennan found Jenkins had slurred speech, smelled of alcohol, his eyes were watery and bloodshot and his balance, unsteady.  As Brennan attempted to take Jenkins into custody for public intoxication, he saw a white tissue in Jenkins' mouth, and ordered him to remove it and place it on the hood of the patrol car.  When Jenkins did so, a white rock-like substance rolled out of the tissue.  Jenkins grabbed the substance, threw it in his mouth and swallowed it.  Brennan seized two more of the "crack rocks"[2] from inside the tissue on the hood of the car, and completed his arrest of Jenkins.  Officer Palmer, having concluded his contact with the Hispanic males, had come to assist Brennan, and the two officers were speaking about whether Jenkins was perhaps selling the substance, when Jenkins interjected, "How do you know I was selling to

---

[1]Under § 99-19-81, the sentence to be imposed is the maximum term provided by statute for the crime committed, without parole; under § 99-19-83, the sentence to be imposed is life imprisonment without parole.

[2]In motion hearings in the case, Brennan testified he field tested the substance which was positive for cocaine. [16-3, p. 59]

them, maybe I bought from them, maybe they selling." [16-4, p. 27-38] Jenkins was transported to Biloxi Police Department, and Narcotics Investigator Lance Chisum was notified of the arrest.

When Chisum arrived to interrogate Jenkins, he advised Jenkins of his Miranda rights, and Jenkins signed the rights form at 1:33 a.m., January 29, 2007. Jenkins told Chisum about the "dope," stating some of the cocaine he got was good and some bad, and that he bought what he had on him from a Hispanic male.[3] [16-4, p. 38-50] Investigator Michael Mason took the drugs confiscated from Jenkins to the Mississippi Crime Laboratory for analysis. [16-4, p. 51-55]

Crime Lab analyst Alison Smith tested the substances, performing a cobalt thiocyanate test and a gas chromatography mass spectroscopy. These tests produced data from which Smith concluded the substance contained cocaine. Smith was unavailable to testify at trial, as she was on extended medical leave from the Crime Lab having been diagnosed with stage-4 cancer, so the State called Smith's supervisor Timothy Gross as a witness. Gross, a 28 year employee of the Mississippi Crime Lab, is Associate Director of the Mississippi Crime Lab and manager of the Gulf Coast Regional Lab. He oversees the overall operation of the Gulf Coast Lab and technically and administratively reviews cases, particularly drug cases. Gross testified he has analyzed drugs approximately 100,000 times. In accordance with the standard operating procedure of the Mississippi Crime Lab, Gross technically reviews cases within his area of expertise, and has testified as an expert about 250 times. Gross reviewed the entire case file including the data from the tests performed, and concluded on his own that the substances tested contained cocaine. Gross testified the weight of the exhibit was at least 0.1 gram. [16-4, pp. 67-79] Both Smith and Gross signed the Crime Lab report. Jenkins called no witnesses and did not testify. After the jury found him guilty, the trial court found Jenkins was a habitual offender

---

[3]The jury heard Jenkins' entire statement which was introduced into evidence at trial.

under § 99-19-83, and sentenced him to serve life imprisonment without parole.

On appeal, Jenkins asserted his constitutional right to confront the witnesses against him was violated by the trial court's allowing Gross to testify in place of Smith who performed the substance testing. The Mississippi Court of Appeals rejected the argument and affirmed Jenkins conviction and sentence on September 13, 2011. *Jenkins v. State*, 102 So.3d 273 (Miss. App. 2011), *rehearing denied*, January 17, 2012. The appellate court expressly distinguished the facts of Jenkins' case from both *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 131 S.Ct. 2705 (2011), and held Jenkins had waived his Confrontation Clause issue by failing to move in limine to prevent Gross's testifying, or to make contemporaneous objections to the testimony; the appellate court further held that even if the matter had been preserved for appellate review, the trial court committed no abuse of discretion in allowing Gross to testify, since Gross testified to his own independent, expert opinion. *Jenkins*, 102 So.3d at 282-84.

Jenkins petitioned the Mississippi Supreme Court for *certiorari* on the same grounds, violation of his right of confrontation. The Mississippi Supreme Court granted *certiorari* "to examine whether the trial court erred by allowing a laboratory supervisor to testify regarding the results of substance testing, where the supervisor reviewed and verified the results, but another analyst actually performed the tests." *Jenkins v. State*, 102 So.3d 1063, 1064 (Miss. 2012), *as modified on denial of rehearing* December 20, 2012. After noting that issues regarding admission or exclusion of evidence are reviewed for abuse of discretion, while constitutional issues are reviewed *de novo*, the Mississippi Supreme Court disagreed with the appellate court's conclusion that Jenkins' Confrontation Clause issue was procedurally barred. The Mississippi Supreme Court addressed the merits of Jenkins' Sixth Amendment claim, and concluded

Jenkins' right of confrontation was not violated by Gross's testifying in lieu of Smith.

The United States Supreme Court denied Jenkins' petition for *certiorari* June 24, 2013. [15-3]  On February 6, 2014, the Mississippi Supreme Court denied his July 30, 2013 application for leave to file a post-conviction motion in which he claimed three of his court-appointed attorneys provided ineffective assistance of counsel because they failed to challenge the prior convictions used to charge him as a habitual offender [16-9, beginning at page 6], finding his ineffective assistance of counsel claims failed to meet the standard of *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  [15-4], [16-9, p. 2]  There is no ineffective assistance of counsel issue in the habeas petition before this Court.

## Law and Analysis

In his habeas petition filed in this Court on December 16, 2014, Jenkins again urges that his constitutional right of confrontation was violated by the trial court's allowing Gross to testify in place of the testing analyst, and that the rejection of his arguments to that effect by the Mississippi Supreme Court was contrary to and an unreasonable application of the U.S. Supreme Court decision in *Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2710 (2011).   Since the Mississippi Supreme Court considered and denied Jenkins' Confrontation Clause claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 precludes this Court from granting his petition for habeas relief unless the State court's adjudication on the merits:

> (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Jenkins' claim is governed by § 2254(d)(1), which applies to questions of law or mixed questions of law and fact.  *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000).

A state court decision is contrary to federal law only if it reflects a conclusion opposite to one reached by the United States Supreme Court on an issue of law, or reaches a conclusion different from the Supreme Court's on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 364-65 (2000). A state court decision involves an unreasonable application of federal law if it identifies the correct governing principle, but unreasonably applies the principle to the facts of the prisoner's case; this must be an objectively unreasonable application of federal law, not merely an erroneous or incorrect application. *Williams*, 529 U.S. at 365; *see also Ramdass v. Angelone*, 530 U.S. 156, 157 (2000). Sate court factual findings are presumed correct unless there is such an unreasonable application, and the burden is on the petitioner to prove, with clear and convincing evidence, that the facts were determined unreasonably. *Knox v. Johnson*, 224 F.3d 470 (5th Cir. 2000); *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). Jenkins has made no showing of any unreasonable determination of the facts of his case, so the only issue before this Court is whether the state court holding that his right to confront witnesses was not violated by Gross's testimony in lieu of Smith's was contrary to or involved an unreasonable application of clearly established Federal law.

On June 23, 2011, the United States Supreme Court decided *Bullcoming v. New Mexico*, 131 S.Ct. 2705 (2011). After he rear-ended another motor vehicle, Bullcoming was arrested for driving while intoxicated (DWI). He failed field sobriety tests, and refused a breath test, so officers obtained a search warrant for a blood-alcohol analysis. Bullcoming's blood was drawn at the hospital and delivered to the state Scientific Laboratory Division (SLD) for testing. SLD analyst Caylor tested the blood sample by gas chromatograph machine, and recorded that it was 0.21 grams per hundred milliliters, which resulted in Bullcoming's being charged with aggravated DWI. After trial began, the prosecution announced, without elaboration, that Caylor had recently been put on "unpaid leave" and would not be testifying, but never asserted that

Caylor was unavailable.  The prosecution called another SLD analyst, "who had neither observed nor reviewed Caylor's analysis" and had no independent opinion concerning Bullcoming's BAC, to introduce Caylor's report as a business record, all over the objection of the defense.  The jury convicted Bullcoming, and the state supreme court affirmed.  The U.S. Supreme Court reversed, holding Caylor's report contained a testimonial certification, made to prove a fact at Bullcoming's trial, and its introduction through in-court testimony of an analyst who did not sign the certification or personally perform or observe the testing reported in the certification violated Bullcoming's right of confrontation.

Respondent argues, and the undersigned agrees, that Jenkins' case is not factually "materially indistinguishable" from *Bullcoming*.  Justice Sotomayor concurring in part in *Bullcoming*, emphasized "the limited reach of the Court's opinion" in that case stating *Bullcoming* "is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue." *Id.*, 131 S.Ct. at 2722.  Gross's testimony establishes that Jenkins *is* such a case.  Gross was Smith's supervisor and the technical reviewer of her work; he is an experienced, expert drug analyst himself, and testified as to his independent conclusions that the exhibit contained cocaine and weighed at least 0.1 gram, which concurred with Smith's report; and both he and Smith signed the lab report.  Smith was unavailable due to illness, and defense counsel had been apprised of that fact days before Jenkins' trial began.   On *certiorari*, the Mississippi Supreme Court recognized the importance of these distinctions, holding in Jenkins:

> the testifying witness was the laboratory supervisor.  While Gross was not involved in the actual testing, he reviewed ... and signed the report as the "case technical reviewer." ... Gross was able to explain competently the types of tests that were performed and the analysis that was conducted.  He performed procedural checks by reviewing all of the data submitted to ensure that the data supported the conclusions contained in the report.  Based on the data reviewed, Gross reached his own conclusion that the substance tested was cocaine.  His

> conclusion was consistent with the report, and he signed the report as the technical reviewer. Gross...had "intimate knowledge" about the underlying analysis and the report prepared by the primary analyst.
>
> ***
>
> The primary analyst in this case was unavailable to testify because she had taken an indefinite leave of absence after being diagnosed with stage-four cancer. ... A supervisor, reviewer, or other analyst involved may testify in place of the primary analyst where that person was "actively involved in the production of the report and had intimate knowledge of the analyses even though [he or] she did not perform the tests first hand." *McGowen [v.State*, 859 So.2d 320 (Miss. 2003)] at 340. Gross met this standard and the trial court did not abuse its discretion by allowing him to testify. Jenkins had the opportunity to confront and cross-examine Gross at trial, which satisfied his Sixth Amendment right to confront the witness against him.

*Jenkins*, 102 So.3d at 1069. The undersigned is unpersuaded that *Bullcoming* has "clearly established" that testimony from anyone other than the analyst who performed the testing on a controlled substance would violate the right of confrontation. Indeed, the Fifth Circuit has recognized, in an unpublished opinion, that it remains unclear whether testimony of a supervisor working in the same lab with the testing analyst would constitute such a violation. *United States v. Johnson*, 558 Fed.Appx. 450, 453 (5th Cir. 2014), *cert. denied*, 135 S.Ct. 278 (2014). This, in addition to the factual distinctions between Jenkins' case and *Bullcoming*, leaves the undersigned unable to find that the state court decision is contrary to, or involved an objectively unreasonable application of, clearly established federal law in Jenkins' case. *See Flournoy v. Small*, 681 F.3d 1000, 1005 (9th Cir. 2012) (involving testimony of an analyst who performed a technical review of the testing analyst's case file).

## **RECOMMENDATION**

Based upon the foregoing, the undersigned recommends that the motion to strike [18] the response to Jenkins' traverse be denied, and that Robert L. Jenkins' petition for habeas corpus relief be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Parties have 14 days after being served a copy of this Report and Recommendation to serve and file written objections to it.  Objections must be filed with the clerk of court, served upon the other parties and submitted to the assigned District Judge.  Within seven days of service of the objection, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection.  An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections.  A party who fails to timely file written objections is barred, except on grounds of plain error, from attacking on appeal any factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 4th day of November, 2015.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE